A02A1280, A02A1281. SUMITOMO CORPORATION OF AMERICA et al. v. DEAL et al.; and vice versa.
A02A1464. SUMITOMO CORPORATION OF AMERICA et al. v. MONTGOMERY et al.
(569 SE2d 608)

BLACKBURN, Chief Judge.

These cases, which involve common parties and many of the same facts, have been consolidated on appeal. In Case No. A02A1280, appellants, Sumitomo Corporation of America, SMG Development Associates, L.P., and its successors in interest, Atlantic Hills Corporation and A. Hills Corporation (hereinafter collectively "SMG"), were found liable in a continuing trespass and nuisance surface water invasion case for damage to the land of appellees Gary and Anita Deal. In Case No. A02A1464, appellants SMG Development Associates, L.P., Atlantic Hills Corporation and A. Hills Corporation

---

[8] *Gearin v. State of Ga.*, 218 Ga. App. 390, 391 (1) (461 SE2d 562) (1995).

were found liable in a continuing trespass and nuisance surface water invasion case for damage to the land of appellees Kent and Glenda Montgomery. In both cases, SMG asserts that the trial court erred in: refusing to allow the jury to apply a doctrine of "reasonable use" to the facts of these cases; failing to grant a directed verdict in favor of all defendants on the nuisance and trespass theories of liability; allowing the attorney fees claims of both the Deals and the Montgomerys to go to the jury; and giving, or not giving, various charges to the jury. Finding these, and other, enumerations of error without merit, we affirm. In Case No. A02A1281, the Deals appeal the reduction of the award of punitive damages by the trial court. Because we find that the award of punitive damages was not excessive, we reverse and remand that case so that the trial court may reinstate the amount of punitive damages awarded by the jury.

Hamilton Mill is a 1,300-acre residential development constructed by SMG in Gwinnett County. As part of the development of Phase IV of Hamilton Mill, in the summer of 1996, SMG built a detention pond with an outlet pipe adjacent to the Deals' property. Because of the discharge of water from the detention pond, the Deals and the Montgomerys, their downstream neighbors, experienced siltation, erosion, and flooding on their property.

On September 5, 1996, Gary Deal, Kent Montgomery, and other downstream neighbors met with representatives of SMG and informed them about the damage to their property caused by the increased flow of water and sediment from the detention pond. Though corrective measures could have been taken at this early point in the development of Phase IV, SMG did nothing to lessen the impact of the water being discharged onto the Deals' and Montgomerys' land. Since the construction of the detention pond, water exiting the detention pond has continued to scour, erode, and flood the downstream properties every time it rains.

In February 1999, both the Deals and the Montgomerys filed suits against SMG. In August 2001, a jury awarded the Deals $175,738.98 in compensatory damages, $42,438.50 in attorney fees, and $275,000 in punitive damages. In November 2001, a jury awarded the Montgomerys $73,000 in compensatory damages and $54,000 in attorney fees.

*Case No. A02A1280*

1. In its first enumeration of error, SMG argues that the trial court erred in refusing to allow the jury to apply the doctrine of reasonable use to the facts of this case. This argument is meritless.

First, the trial court correctly instructed the jury as follows:

One landed proprietor has no right to concentrate and collect water and thus cause it to be discharged upon the land of a lower proprietor in greater quantities at a particular locality or in a manner different from that in which the water would be received by the lower property if it simply ran down upon it from the upper property by the law of gravitation.

This is an accurate statement of Georgia law as set forth by our Supreme Court, see *Gill v. First Christian Church &c.*[1] and cases cited therein, and has been followed by this Court. See, e.g., *Baumann v. Snider.*[2]

The essence of SMG's argument is its belief that Georgia law governing surface water invasion cases is an "arcane rule of law" which "stifles potential development and subjects project developers to liability for converting raw, rural land to modern urbanized development." SMG would have us discard this rule and adopt, as have some states, a more enlightened "reasonable use" rule which allows "the benefits and burdens of development to be shared by the community." Pointing out that such a principle of reasonable use is found both in rules of law adopted by other states, such as Missouri, and also in OCGA § 51-9-7, SMG asserts that the trial court erred in not charging, as it requested, Missouri's rule of law on reasonable use and OCGA § 51-9-7.

Even if we were convinced that a more enlightened rule should replace the current ancient law, "this court has no authority to overrule or modify a decision of the Supreme Court of Georgia as the decisions of the Supreme Court of Georgia shall bind all other courts as precedents." (Punctuation omitted.) *Etkind v. Suarez.*[3] Further, it appears patently clear that the trial court did not err in failing to charge a Georgia jury on Missouri law. That other jurisdictions have adopted a different rule governing surface water invasion cases is "wholly irrelevant in the face of a Supreme Court of Georgia decision directly on point." Id.

As to the rule found in OCGA § 51-9-7, it does not apply to the facts of this case. OCGA § 51-9-7 states:

The owner of land through which nonnavigable watercourses flow is entitled to have the water in such streams

---

[1] *Gill v. First Christian Church &c.*, 216 Ga. 454 (1) (117 SE2d 164) (1960).
[2] *Baumann v. Snider*, 243 Ga. App. 526, 527, n. 3 (532 SE2d 468) (2000).
[3] *Etkind v. Suarez*, 234 Ga. App. 108, 109 (505 SE2d 831) (1998).

come to his land in its natural and usual flow, subject only to such detention or diminution as may be caused by a reasonable use of it by other riparian proprietors. The diverting of the stream in whole or in part from its natural and usual flow, or the obstructing thereof so as to impede its course or cause it to overflow or injure the land through which it flows or any right appurtenant thereto, or the polluting thereof so as to lessen its value to the owner of such land shall constitute a trespass upon the property.

This statutory rule applies in suits where one riparian proprietor continuously diminishes or detains the water in the stream unreasonably with reference to the rights of another riparian proprietor, who is damaged thereby. See *Price v. High Shoals Mfg. Co.*[4] In this case, the Deals are not contending that SMG's unreasonable use of water has diminished the supply of water to which they are entitled; on the contrary, this suit stems from property damage caused by the increased flow of water onto their land.

SMG informs us that "[c]ourts which have adopted the modern view of reasonable use recognize the balancing of rights and responsibilities when land is improved." Under Georgia law, "[p]rivate property cannot be physically harmed or its value impaired in this way, however socially desirable the conduct, without payment being made for the harm done, if the interference that is the consequence of the activity is substantial and considered to be unreasonable." *Fielder v. Rice Constr. Co.*[5] We believe that the jury, in awarding the Deals compensatory damages, attorney fees, and punitive damages for the harm to their land caused by the runoff from SMG's detention pond, properly balanced the rights and responsibilities of the parties to this case.

2. In its second enumeration of error, SMG contends that because Sumitomo Corporation was nothing more than a shareholder in corporate investors of the developer of Hamilton Mill, the trial court erred in failing to direct a verdict, or enter judgment notwithstanding the verdict ("j.n.o.v."), in Sumitomo's favor. We disagree.

We may deal jointly with the trial court's denial of both SMG's motion for directed verdict and also its motion for j.n.o.v. since both

arise from the same issues of law and fact and are governed by the same standards of appellate review. "A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced with

---

[4] *Price v. High Shoals Mfg. Co.*, 132 Ga. 246 (64 SE 87) (1909).

[5] *Fielder v. Rice Constr. Co.*, 239 Ga. App. 362, 365-366 (522 SE2d 13) (1999).

all reasonable inferences therefrom demands a particular verdict. On appeal, the standard of review of a trial court's denial of a motion for directed verdict is the 'any evidence' standard."

(Citations omitted.) *Kroger Co. v. Brooks.*[6]

Under Georgia law, in order to be held liable for nuisance, "[o]wnership of land by the tortfeasor is not an element, but control is; the essential element of nuisance is control over the cause of the harm. The tortfeasor must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance." (Citations omitted.) *Fielder*, supra at 366. Thus, under the standard set forth above, the trial court did not err if there is any evidence that Sumitomo created, continued, or maintained the detention pond.

Testimony at trial showed that Sumitomo has an eighty percent ownership in Atlantic Hills, one of the two partners in the SMG partnership and the successor in interest to SMG. Joseph Zagranski, the director of real estate for Sumitomo, became a vice president of Atlantic Hills shortly after he joined Sumitomo. Zagranski testified that he became asset manager of Hamilton Mill in the fall of 1997 and continued the development of Phase IV. He also testified that he was aware of the lawsuit filed by the Deals and their neighbors, that he had engineers analyze the construction of the detention pond, and that a decision was made to maintain rather than make modifications to the detention pond. Given these facts, we believe, under the "any evidence" standard, that Zagranski's testimony allowed the jury to find that Sumitomo exercised enough control in the decision to maintain the detention pond without modifications to hold it liable for the damage to the Deals' land.

3. SMG next contends that the trial court erred in failing to grant either a directed verdict or j.n.o.v. in favor of all the defendants on the Deals' nuisance theory of liability. Beginning with the proposition that " '[t]hat which the law authorizes to be done, if done as the law authorizes, cannot be a nuisance,' " *City of Douglasville v. Queen,*[7] SMG argues that the development of Hamilton Mill was a lawful and permissible use of its property, and that no part of the project was done unlawfully or contrary to what the appropriate governing authorities permitted. In other words, "[t]he project was authorized and executed in accordance with law and cannot, therefore, be a nuisance." Again, we disagree.

OCGA § 41-1-1 provides: "A nuisance is anything that causes hurt, inconvenience, or damage to another and *the fact that the act*

[6] *Kroger Co. v. Brooks*, 231 Ga. App. 650, 651 (500 SE2d 391) (1998).
[7] *City of Douglasville v. Queen*, 270 Ga. 770, 773 (4) (514 SE2d 195) (1999).

*done may otherwise be lawful shall not keep it from being a nuisance.*"
(Emphasis supplied.) The italicized language contradicts SMG's
argument and makes clear that an act, though lawful in itself,
becomes a nuisance when conducted in an illegal manner to the hurt,
inconvenience, or damage of another. *Mayor &c. of Savannah v.
Palmerio.*[8] See also *Baumann v. Snider*, supra at 527, n. 4 (in a case
of nuisance "the infringement is the result of an act which is not
wrongful in itself, but only in the consequences which may flow from
it"). "A condition may be illegal when it is objectionable only on
grounds of causing 'hurt or inconvenience,' i.e., when it is a nui-
sance." *Banks v. City of Brunswick.*[9] In the present case, though
SMG's construction of the detention pond was arguably done in a
lawful manner, that fact did not prevent the pond from becoming a
nuisance when the increased water flow caused hurt and inconve-
nience to the Deals and their neighbors. Finally, we repeat the prin-
ciple noted above that "[p]rivate property cannot be physically
harmed or its value impaired in this way, *however socially desirable
the conduct*, without payment being made for the harm done, if the
interference that is the consequence of the activity is substantial and
considered to be unreasonable." (Emphasis supplied.) *Fielder*, supra
at 365-366.

4. In its fourth enumeration of error, SMG contends that the
trial court erred in permitting the Deals' trespass theory to go to the
jury because trespass requires proof of the property's value before
and after the trespass, and the Deals failed to provide evidence of
property value. A similar argument was rejected by this Court in *Kiel
v. Johnson.*[10] In that case we stated that "the cost of repair often has
been held to be an appropriate measure of damages in cases involv-
ing a continuing nuisance or trespass." Id. at 45. See also *Raymar,
Inc. v. Peachtree Golf Club;*[11] *Payne v. Whiting;*[12] and *Southern Mut.
Investment Corp. v. Langston.*[13] The Deals presented extensive testi-
mony regarding the costs of repairing the damage done to their land
by the water flowing from SMG's detention pond.[14] The trial court did
not err.

---

[8] *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419, 425 (249 SE2d 224) (1978).

[9] *Banks v. City of Brunswick*, 529 FSupp. 695, 698 (S.D. Ga. 1981), aff'd, 667 F2d 97
(11th Cir. 1982).

[10] *Kiel v. Johnson*, 179 Ga. App. 43 (345 SE2d 131) (1986).

[11] *Raymar, Inc. v. Peachtree Golf Club*, 161 Ga. App. 336, 337 (2) (B) (287 SE2d 768)
(1982).

[12] *Payne v. Whiting*, 140 Ga. App. 390, 391 (2) (231 SE2d 796) (1976).

[13] *Southern Mut. Investment Corp. v. Langston*, 128 Ga. App. 671, 675 (6) (197 SE2d
775) (1973).

[14] We note, in connection with our disposition of Case No. A02A1464, that the
Montgomerys also submitted detailed testimony concerning the costs of repairing the dam-
age done to their land by the invading surface waters.

5. We have reviewed SMG's remaining enumerations of error and find that they either have been disposed of in the preceding Divisions of this opinion or are patently without merit.

## Case No. A02A1464

In this case, SMG was found liable for damage to the Montgomerys' land because of surface water runoff from the Phase IV detention pond. Because in this case the facts, as well as the errors enumerated by SMG, are virtually identical to those in Case No. A02A1280, we find no basis for reversing and affirm.

## Case No. A02A1281

The jury awarded the Deals $275,000 in punitive damages. This amount was reduced to $250,000 pursuant to OCGA § 51-12-5.1 (g). The trial court found the punitive damages award of $250,000 to be unconstitutionally excessive and granted remittitur, reducing the award to $100,000. The Deals appeal the reduction of the award of punitive damages on various grounds.

In passing on the trial court's determination of the constitutionality of the award of punitive damages, we apply a de novo standard of review. *Cooper Indus. v. Leatherman Tool Group;*[15] *Time Warner Entertainment Co. v. Six Flags Over Ga.*[16] In deciding whether an award of punitive damages is consistent with due process, we focus on three criteria set forth in *BMW of North America v. Gore;*[17] these criteria are: "(1) the degree or reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Leatherman,* supra at 440.

As to the first *Gore* factor, the evidence established that SMG was advised of the damages done by the water leaving its detention pond on September 5, 1996, but decided to do nothing to abate the flow of water. Testimony showed that in the five years between notice to SMG and trial of the case, there were, among other things, widespread flooding of the Deals' land below the detention pond outlet, the width of the flooding reaching seventy-five feet at the lower end

---

[15] *Cooper Indus. v. Leatherman Tool Group,* 532 U. S. 424, 436 (121 SC 1678, 149 LE2d 674) (2001).

[16] *Time Warner Entertainment Co. v. Six Flags Over Ga.,* 254 Ga. App. 598 (563 SE2d 178) (2002).

[17] *BMW of North America v. Gore,* 517 U. S. 559, 574-575 (116 SC 1589, 134 LE2d 809) (1996).

of the property; steady erosion of the streambed uphill toward the detention pond outlet; undercutting of the streambed, the streambed in places going from an original depth of one or two feet to a depth of six to ten feet; continuing undermining and exposure of tree roots; and cascading torrents of water scouring the land and causing wash-outs. In the face of these conditions, SMG did nothing, maintaining all along that the detention pond had been built in accordance with county regulations. We conclude that the jury could have found the reprehensibility of SMG's conduct sufficient to support the award of punitive damages.

The next *Gore* factor concerns the ratio between the size of the punitive damages and the harm caused by SMG's tortious conduct. *Leatherman,* supra at 441. The Deals were awarded $175,738.98 in compensatory damages and $250,000 in punitive damages, resulting in a ratio of compensatory to punitive damages of approximately 1 to 1.42. The U. S. Supreme Court held in *Pacific Mut. Life Ins. Co. v. Haslip*[18] that a punitive damages award of "more than 4 times the amount of compensatory damages" did not "cross the line into the area of constitutional impropriety," and, in *TXO Production Corp. v. Alliance Resources Corp.,*[19] suggested that a punitive to compensatory damages ratio of 10 to 1 might be appropriate in some cases. In light of these holdings, it is clear that there is a reasonable relationship between the amount of punitive damages awarded and the harm caused by SMG to the Deals' land.

"Comparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness." *Gore,* supra at 583. We look then to any state or county statutes which set forth civil penalties for activities which result in damage to others because of surface water runoff.

Georgia's Erosion and Sedimentation Act, OCGA § 12-7-1 et seq., regulates "land-disturbing activities." A "land-disturbing activity" is defined as "any activity which may result in soil erosion from water or wind and the movement of sediments into state water or onto lands within the state, including, but not limited to, clearing, dredging, grading, excavating, transporting, and filling of land." OCGA § 12-7-3 (10). Under the Erosion and Sedimentation Act, violations can result in a civil penalty not to exceed $2,500 per day, or per violation. OCGA § 12-7-15 (a) (1). Gwinnett County's Soil Erosion and

---

[18] *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U. S. 1, 23-24 (111 SC 1032, 113 LE2d 1) (1991).

[19] *TXO Production Corp. v. Alliance Resources Corp.,* 509 U. S. 443, 462 (113 SC 2711, 125 LE2d 366) (1993).

Sediment Control Ordinance provides for penalties of between $500 and $2,500 per violation.

> Where a nuisance is not permanent in its character but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. Further, where one creates a nuisance and permits it to remain, it is treated as a continuing wrong and giving rise, over and over again, to causes of action.

(Citations and punctuation omitted.) *Southfund Partners v. City of Atlanta.*[20] There was testimony that the Deals' land was subject to flooding and erosion every time it rained; it is also the fact that this flooding and erosion went on for years. Thus, the jury could have concluded that there were numerous, even hundreds, of instances of damage to the Deals' property. The amount of punitive damages awarded by the jury is, therefore, consistent with the imposition of civil penalties for numerous violations of either the state or county regulations regarding control of erosion.

This third *Gore* factor was the factor which the trial court appeared to rely on exclusively in reducing the award of punitive damages. The trial court noted in its order that in the two other cases in which the Deals' neighbors had sued SMG, no punitive damages were awarded; it also based its decision to reduce the award on a comparison of punitive damages awarded in other surface water drainage cases. These were improper comparisons. As *Leatherman* instructs, the proper comparison is not between the punitive damages awarded by the jury and punitive damages in similar cases, but "between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Leatherman*, supra at 440. We remand this case to the trial court for reinstatement of the punitive damages awarded by the jury, reduced to $250,000 pursuant to OCGA § 51-12-5.1 (g). We note that the Deals had agreed to the reduction of the punitive damages award to $250,000 in the trial court.

*Judgment affirmed in Case Nos. A02A1280 and A02A1464. Judgment reversed and remanded in Case No. A02A1281. Johnson, P. J., and Miller, J., concur.*

---

[20] *Southfund Partners v. City of Atlanta*, 221 Ga. App. 666, 668-669 (3) (472 SE2d 499) (1996).

DECIDED JULY 25, 2002 

*Swift, Currie, McGhee & Hiers, Stephen L. Cotter, Christopher D. Balch*, for appellants.

*Schreeder, Wheeler & Flint, Lynn C. Stewart, Jason W. Graham*, for appellees.