A03A1954. GREENWALD et al. v. KERSH et al.
(593 SE2d 381)

ANDREWS, Presiding Judge.

Gary Greenwald and Denise Greenwald sued their neighbors, Martin Kersh and Jill Kersh, for trespass. The complaint alleged

---

that the grading of and deposit of dirt onto the Kershes' property had altered the flow of surface water from the Kershes' land and caused the Greenwalds' property to flood. The Kershes filed an answer denying the Greenwalds' claims, and counterclaimed for intentional infliction of emotional distress and loss of consortium. The Greenwalds amended their complaint to add First Magnolia Homes, Inc. and Frank Burns, builders of the Kershes' home, as additional parties, and to seek damages for nuisance. The Greenwalds filed an additional amended complaint requesting equitable relief under the covenants of the Sugarloaf Country Club subdivision. The Kershes moved for summary judgment on the Greenwalds' claims. The trial court granted the Kershes' motion, and the Greenwalds appeal. We reverse for the reasons set forth below.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). A defendant carries this burden by demonstrating the absence of evidence as to one essential element of the plaintiff's case. Should the defendant do so, the plaintiff "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." Id. Our review is de novo. *Walker v. Virtual Packaging*, 229 Ga. App. 124 (493 SE2d 551) (1997).

The evidence, viewed most favorably to the Greenwalds, shows that the Greenwalds and Kershes own adjacent lots in the Sugarloaf Country Club subdivision in Gwinnett County. The Kershes contracted with First Magnolia to construct a house on their property. Before the construction, surface water on the Greenwald property drained downhill onto the Kershes' lot and another adjacent lot. In the course of construction of an elevated driveway and a pool, and in landscaping the Kershes' property, a large amount of dirt was placed on and near the property line between the Kershes' property and the Greenwalds' property. The dirt caused surface water which had naturally run down onto the Kershes' lot from other property to be diverted onto the Greenwalds' property, flooding it. Although the Greenwalds made a written demand for correction of the nuisance, the Kershes denied that they had any responsibility for remedying the nuisance.

1. For purposes of their motion for summary judgment only, the Kershes admit that a nuisance exists and a trespass occurred. "Although property must accept the natural runoff of water from neighboring lands, an artificial increase or concentration of water discharge may give rise to a cause of action." *Baumann v. Snider*, 243 Ga. App. 526, 527 (1), n. 3 (532 SE2d 468) (2000).

The issue is whether the Kershes may be held responsible for the nuisance and trespass. The Kershes contend that they are entitled to summary judgment because they did not control or direct the construction work leading to the creation of the nuisance. The Greenwalds argue that the Kershes may be held liable for the nuisance because issues of material fact remain as to whether the Kershes ratified the work of their contractor, maintained the nuisance, and violated the restrictive covenants applicable to their property. We agree with the Greenwalds.

*Independent Contractor.* The Kershes are not necessarily responsible for the alleged nuisance because they are the property owners. "Under Georgia law, in order to be held liable for nuisance, ownership of land by the tortfeasor is not an element, but control is; the essential element of nuisance is control over the cause of the harm. The tortfeasor must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance." (Citation and punctuation omitted.) *Sumitomo Corp. of America v. Deal,* 256 Ga. App. 703, 707 (2) (569 SE2d 608) (2002). The Kershes contend that any injury suffered by the Greenwalds was caused solely by the Kershes' independent contractor, First Magnolia, and they are not liable to the Greenwalds for those acts. "An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer." OCGA § 51-2-4.

Where the independent contractor, and not the owner, is "responsible for all construction, means, methods, techniques, sequences and procedures and for coordinating all portions of the work under the contract," then an employee injured on the construction site cannot hold the owner liable for the negligence of the independent contractor, so long as the owner has not assumed responsibility for the manner in which the work was done. *Modlin v. Swift Textiles,* 180 Ga. App. 726, 729 (1) (350 SE2d 273) (1986). The Kershes try to extend *Modlin* and a number of other factually inapplicable decisions to the case at bar by showing they had no responsibility for the manner in which work was done on their property. See, e.g., *Grey v. Milliken & Co.,* 245 Ga. App. 804 (539 SE2d 186) (2000) (plaintiff injured on construction site owned by defendant but controlled by independent contractor). The Kershes show they entered into a contract under which First Magnolia agreed to construct their home so that it was ready to be occupied, and that the Kershes were not required to perform any work or furnish any material or labor for the project. Evidence also shows that the Kershes made no decisions with regard to the elevation and grading of their property or the decision to use fill dirt. According to Burns, First Magnolia was "responsible for that project from beginning to end." Martin Kersh deposed

that "[A] house was built for us and a pool was built for us. And whatever those people had to do to build that house and to build the pool they did."

The flaw in the Kershes' position is that there is evidence that they accepted the work of the independent contractor and were on notice that the work constituted a nuisance. OCGA § 51-2-5 (6) provides: "An employer is liable for the negligence of a contractor: . . . (6) If the employer ratifies the unauthorized wrong of the independent contractor."

In *Louisville &c. R. Co. v. Hughes*, 143 Ga. 206 (84 SE 451) (1915), the plaintiff sought to recover damages caused by, among other things, the diversion of a stream onto the lands of the plaintiff, but evidence at trial showed that the alleged tortious acts were committed in large part by an independent contractor. In considering the principles appropriate for jury instructions, our Supreme Court noted, in connection with the injuries caused by interference with the flow of water,

> if the defendant accepted the work so constructed by the independent contractor as to amount to a nuisance, the defendant became at once responsible for the existence of the nuisance, under a rule very similar to that which makes a principal responsible for unauthorized wrongs committed by his agent by ratifying them.

Id. at 207.

*Chipley v. Beeler*, 122 Ga. App. 781 (178 SE2d 767) (1970), involved the construction of a driveway which interfered with the natural runoff of surface water from appellant's land. The appellant contended that the trial court erred in denying his motion for a directed verdict because the driveway had been constructed by Madison County, an independent contractor and not his agent. Relying on *Hughes*, we held that "[w]hether or not the county was an independent contractor, the evidence discloses that the county's work was accepted by the appellant who did thereby ratify the tortious act that was committed." Id. at 782 (1). Similarly, evidence shows that First Magnolia's work, and the consequences thereof, was accepted by the Kershes, who moved into their home and used the property, including the pool, driveway, and associated grading. "Ratification of the wrongful act may result from acceptance of the work on the theory that acceptance shifts the responsibility for maintaining the work in its defective condition to the employer." (Citations and punctuation omitted.) *Wilmock, Inc. v. French*, 185 Ga. App. 259, 261 (363 SE2d 789) (1987).

The general rule is that ratification of the act of the independent

contractor also requires knowledge of the act. *Wilmock, Inc.*, supra, 185 Ga. App. at 261; see *Toys 'R' Us v. Atlanta Economic Dev. Corp.*, 195 Ga. App. 195, 197 (1) (393 SE2d 44) (1990). The Kershes contend that they had no knowledge concerning the grading of their property or the placement of dirt by their independent contractor which caused the harm to the Greenwalds. However, ratification in this case would not require knowledge of the specific wrongful acts of the independent contractor, see *Jones v. Ceniza*, 257 Ga. App. 806 (572 SE2d 362) (2002) (owner was on notice of problem of his independent contractors' trespass onto neighboring land to cut timber but did nothing to stop it), but acceptance of the independent contractor's work and knowledge of the nuisance. As *Hughes* provides, the property owner's liability lies in acceptance of "the work so constructed by the independent contractor as to amount to a nuisance." *Hughes*, supra, 143 Ga. at 207.

*Atlanta &c. R. Co. v. Kimberly*, 87 Ga. 161 (13 SE 277) (1891), contains a detailed analysis of the common law exceptions to the general rule that an employer is not liable for the wrongful acts of an independent contractor, and these common law exceptions were codified based on this decision. *Peachtree-Cain Co. v. McBee*, 254 Ga. 91, 92 (1) (327 SE2d 188) (1985). Kimberly sued the railroad company for damages associated with the damming of a stream near his home. The injuries were caused by the actions of the railroad's independent contractor during road construction. The jury ruled in Kimberly's favor, the railroad appealed the denial of its motion for new trial, and our Supreme Court reversed. The Court analyzed whether the railroad had ratified the work of its independent contractor:

> It is not shown when the company accepted the road from the contractor. The evidence does show that the work near the plaintiff's house was done either in March, April or May, and that about the 1st of June the plaintiff and his wife became sick. But under the contract the road was not to be turned over to the company until several months after this. The company not being in possession of the road at the time the plaintiff received the injury from the nuisance, and there being no evidence to show that it knew there was a nuisance, it cannot be said that the company ratified any act of its contractor which created a nuisance.

*Kimberly*, supra, 87 Ga. at 172. Consistent with *Hughes*, the implication of the Court's analysis in *Kimberly* is that acceptance of the road and knowledge of the nuisance would have been evidence that the railroad company ratified the act of the independent contractor which created the nuisance.

Here, the Kershes were on notice that ongoing construction on the Kershes' property was damaging the Greenwalds' property and could constitute a nuisance. Evidence shows that after the Kershes moved into their home, the Greenwalds met with the Kershes and told them of their concerns about the mound of dirt near the property line, but that, according to Denise Greenwald, "[w]e waited another month and realized this dirt was not being moved, our yard was being flooded and there was now a pool on top of the dirt which was being completed." Martin Kersh admitted that the Greenwalds made numerous complaints during construction and he knew that the Greenwalds always had a "drainage concern." See *Wilmock, Inc.*, supra, 185 Ga. App. at 261 (1) (when general contractor accepted work of independent contractor, the general contractor knew or should have known that grading of property and placement of septic tank system would result in backup of wastewater).

We conclude that a jury could find that the Kershes ratified the tortious acts of their independent contractor in creating a nuisance. It follows that the trial court erred in granting summary judgment to the Kershes on the Greenwalds' claims of trespass and nuisance.

*Maintenance of a nuisance.* In order to show liability, the "tortfeasor must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance." (Citation and punctuation omitted.) *Sumitomo Corp.*, supra, 256 Ga. App. at 707 (2). We have determined that an issue of material fact remains as to whether the Kershes ratified the wrongful act of their independent contractor in creating a nuisance. We also agree with the Greenwalds that the evidence, viewed most favorably to the Greenwalds as the nonmovants, shows that the Kershes are in control of the nuisance and have elected to maintain it. See id. (defendant's control in decision to maintain detention pond without modification sufficient to hold it liable in nuisance action).

The Kershes argue they cannot be held liable for maintaining a nuisance that cannot be practically abated without removal of their house and pool. See *Goode v. Mountain Lake Investments*, 271 Ga. 722, 723 (1) (524 SE2d 229) (1999) (order to return surface water runoff to pre-development levels may be impossible and overreaching mandate). But they also acknowledge that the Greenwalds suggested that the nuisance could be abated through a drainage system. The Kershes further assert that the Greenwalds' claim for damages was inconsistent with their request to enjoin an abatable nuisance. With respect to a surface water invasion, however, the law "authorizes a remedy which includes both an injunction and damages." (Footnote omitted.) *Baumann*, supra, 243 Ga. App. at 531-532 (4). None of the Kershes' arguments on this issue support the grant of summary judgment in their favor.

*Restrictive Covenants.* The Greenwalds contend that they are entitled to relief based on the Kershes' violation of the restrictive covenants of the Sugarloaf Country Club applicable to the Kershes' property and enforceable by the Greenwalds. Again, we agree.

The owner and developer of the Sugarloaf Country Club subdivision, which includes the Greenwalds' property and the Kershes' property, instituted a Master Declaration of Residential Covenants, Conditions and Restrictions for the subdivision. The restrictive covenants are expressly enforceable by property owners within the subdivision. See *Roth v. Connor*, 235 Ga. App. 866, 869-870 (1) (b) (510 SE2d 550) (1998) (where a general scheme of development exists, the grantees of lots subject thereto may enforce the restrictions against each other). Pursuant to their second amended complaint, the Greenwalds sought to enforce the restrictive covenants.

Section 10.10 of the restrictive covenants applicable to the Kershes' property provides that the original owner of the subdivision has reserved "a non-exclusive easement and right-of-way over, under and along . . . a 10-foot strip of land adjacent to the front, side and rear boundary lines of all Lots within the Property." With respect to the property subject to the easement, Section 10.12 of the restrictive covenants provides "no structures, plantings or other material shall be placed or permitted to remain upon such areas or other activities undertaken thereon . . . which may retard, obstruct or reverse the flow of water or which may damage or interfere with established slope ratios or create erosion problems."[1]

Evidence shows that fill dirt was placed on behalf of the Kershes and to the benefit of their property on the property line between the Kershes' land and the Greenwalds' land, and that the dirt interfered with the flow of water, which is in violation of Section 10.12 of the restrictive covenants. Inasmuch as material issues of fact remain as to whether the Kershes violated the restrictive covenants applicable to their land, the trial court erred in granting summary judgment to the Kershes on the Greenwalds' action to enforce the restrictive covenants.

2. The Greenwalds also claim that the trial court erred in granting summary judgment to the Kershes because the trial court (i) refused to strike certain affidavits, (ii) discovery remained outstanding, and (iii) the Kershes failed to file the deposition of one of the Greenwalds' experts. In view of our ruling in Division 1 above, these enumerations of error are moot and we need not consider them. See

---

[1] Although the Greenwalds do not specifically cite to Section 10.12 of the restrictive covenants until their reply brief, they did argue that the Kershes' acts violated the easement requirements associated with each lot in their initial appellate brief and in their brief to the trial court.

*Etheredge v. Kersey*, 236 Ga. App. 243, 245 (510 SE2d 544) (1998) (because decision did not require consideration of affidavits, appeal regarding trial court's failure to strike affidavits was moot).

*Judgment reversed. Barnes and Adams, JJ., concur.*

DECIDED JANUARY 16, 2004.

*Cornelison & Van Gelderen, Leon A. Van Gelderen, Roy A. Banerjee, Francis C. Schenck*, for appellants.

*Arnall, Golden & Gregory, James A. Gober, Hawkins & Parnell, Warner S. Fox, Berlon & Timmel, James T. Perry, David R. Perry*, for appellees.