**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 14, 2021**

# In the Court of Appeals of Georgia

A21A0262. McBRAYER et al. v. GOVERNORS RIDGE OFFICE PARK ASSOCIATION, INC. et al.

HODGES, Judge.

Governors Ridge Office Park Association, Inc., as well as several owners of office condos within the office park (collectively "Governors Ridge"), sued the owner of a medical practice which provided abortion services. The lawsuit sought to impose liability grounded on theories of nuisance and breach of the condo declaration. A jury ruled in Governors Ridge's favor, and the trial court denied appellants' motion for new trial. For the following reasons, we reverse the trial court's denial of the motion for new trial and remand the case for proceedings consistent with this opinion.

Georgia law is clear that

[a] trial court may grant a motion for new trial if, in the exercise of its discretion, it finds that a jury's verdict was against the weight of the evidence. However, when a trial court denies such a motion, the appellate court does not have the discretion to grant a new trial on that ground. We can only review the evidence to determine if there is any evidence to support the verdict. The standard of appellate review of the denial of a motion for new trial on the general grounds is essentially the same as that applicable to the denial of a motion for directed verdict or judgment n.o.v. The appellate courts can only set a verdict aside, on evidentiary grounds, as being contrary to law in that it lacks any evidence by which it could be supported.

(Citations and punctuation omitted.) *Cook v. Huff*, 274 Ga. 186 (1) (552 SE2d 83) (2001).

Here, the evidence showed that starting in the early 1990's Dr. Daniel E. McBrayer, Sr. operated a medical practice called Alpha OBGYN Group, PC out of a building owned by the McBrayer Family Ltd. Partnership (collectively "McBrayer") in the Governors Ridge office park. Among the services offered by McBrayer's practice were abortions. McBrayer's practice attracted protestors to the public street in front of the office park, some of whom harassed employees or invitees of the businesses in the office park. Protestors could be limited to a handful or up to hundreds, and some of them displayed placards with images of terminated fetuses.

2

Building owners testified that the presence of the protestors disrupted their businesses and made it difficult to sell or rent space in their buildings. At one time in 2012, a suspicious fire was started at McBrayer's building. Governors Ridge was also aware of violence targeted against other clinics which provided abortion services, one of which was also owned by McBrayer.

Beginning in 1997, Governors Ridge sent correspondence to McBrayer regarding concern about the impact the nature of his medical practice could have on the office park given acts of violence at other locations. In 1998, Governors Ridge also complained about loitering in the common area of the park as well as several occasions of bodily "voiding" in the common area, which Governors Ridge attributed to patients and guests of McBrayer. All owners of buildings in Governors Ridge, including McBrayer, were subject to a Declaration of Covenants, Easements, Conditions and Restrictions. Starting in 2009, Governors Ridge sent correspondence to McBrayer alleging that his practice was creating a nuisance in the park per the Declarations. Thereafter, in 2010, Governors Ridge imposed daily financial sanctions against McBrayer for the purported nuisance pursuant to a provision of the Declarations which permitted financial sanctions for violations.

McBrayer did not pay the sanctions and, in 2013, Governors' Ridge sued McBrayer seeking money damages, an injunction, attorney fees, and punitive damages.[1] A jury awarded a total verdict, divided among the appellees, of over $1.17 million with attorney fees of over $311,000.[2] The trial court denied McBrayer's motion for new trial, and McBrayer timely appealed.

1. McBrayer alleges the trial court erred in denying his motion for new trial because the evidence is insufficient to support liability. We agree that McBrayer is entitled to a new trial consistent with the holdings in this opinion.

Governors Ridge claims it is entitled to relief because McBrayer created a nuisance as defined by both the common law and the office park's Declarations. Specifically, the Governors Ridge brief divides the "constituent parts of the nuisance" for which it sued to be: (1) the "discomforting, annoying, and offensive" nature of the abortion services provided by McBrayer's practice which brought unwanted attention to the office park and distress to the other owners; (2) the fear that violence would

_____

[1] The complaint did not specify the cause of action Governors Ridge was pursuing to hold McBrayer liable, but the allegations sounded in nuisance. Later, in the pre-trial order, Governors Ridge indicated that violation of the covenants of the Declaration provided another basis for liability.

[2] By the time of trial McBrayer had sold his building, so there was no longer a request by Governors Ridge for injunctive relief.

4

befall the office park because of a fire at McBrayer's building and acts of violence perpetrated against other abortion clinics; and (3) loitering, littering, urination, and defecation in the common space by patients and guests of McBrayer's practice. Governors Ridge denies that it alleges the protestors themselves were a nuisance, rather that they served as a reminder of the aspects of McBrayer's practice which the owners of the park found distasteful. We will address these causes of actions and grievances in turn.

At the outset, we note that McBrayer did not move to dismiss the claims against him, nor did he move for a directed verdict in the trial court. Accordingly, McBrayer does not seek, and he is not entitled to, judgment as a matter of law on any of his enumerations. Instead, he is only entitled to a new trial to be conducted subject to the holdings contained in this opinion. *Aldworth Co. v. England*, 281 Ga. 197, 199 (2) (637 SE2d 198) (2006) ("For the reasons that follow, we conclude that OCGA § 5-6-36 (a) should be interpreted to permit a party to obtain only a new trial on appeal if []he prevails on a claim that the evidence was insufficient to sustain the verdict, but failed to move for a directed verdict on that ground at trial."). At this new trial, Governors Ridge and McBrayer are bound by the law of the case, but they are not

confined to the evidence introduced in the first trial. *Strickland & Smith, Inc. v. Williamson*, 281 Ga. App. 784, 785 (637 SE2d 170) (2006).

### a. Common Law Nuisance

"A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man." OCGA § 41-1-1. "Under Georgia law, in order to be held liable for nuisance, ownership of land by the tortfeasor is not an element, but control is; the essential element of nuisance is control over the cause of the harm. The tortfeasor must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance." (Citation and punctuation omitted.) *Terry v. Catherall*, 337 Ga. App. 902, 905 (1) (789 SE2d 218) (2016).

### 1. The Nature of the Clinic as a Nuisance

The crux of Governors Ridge's case presented to the jury at trial concerned the nature of McBrayer's medical practice, which provided abortion services, and the feelings the practice inspired in the other owners of the office park. Owners testified they felt upset knowing what types of procedures were performed at McBrayer's

6

office and about how the protestors, while legally present outside the park, compounded their discomfort upset by serving as a reminder of abortion. Although Governors Ridge attempts to distance its claims from the constitutionally-protected activity of the protestors, much of the evidence presented regarding damages concerned the effect the protestors had on the ability of owners of the park to sell or lease their buildings. Governors Ridge portrays the nature of McBrayer's practice as being "grossly out of character" with the nature of the office park.

Governors Ridge admits, however, and the record demonstrates, that the office park was zoned to permit medical practices such as McBrayer's. Indeed, other medical practices existed in the office park. Moreover, there was no evidence at trial that McBrayer's practice operated unlawfully.

Georgia law recognizes "[t]hat which the law authorizes to be done, if done as the law authorizes, cannot be a nuisance. Thus, where the act is lawful in itself, it becomes a nuisance only when conducted in an illegal manner to the hurt, inconvenience or damage of another." (Citation and punctuation omitted.) *City of Douglasville v. Queen*, 270 Ga. 770, 773 (4) (514 SE2d 195) (1999). "That the business itself is offensive to others, or that property in the neighborhood of such business is necessarily adversely affected thereby, or that persons of fastidious taste

7

would prefer its removal, is not sufficient." *Wilson v. Evans Hotel Co.*, 188 Ga. 498, 501 (1) (4 SE2d 155) (1939). By way of example, in *Effingham County Bd. of Commissioners v. Shuler Bros.*, 265 Ga. App. 754, 755 (595 SE2d 526) (2004), this Court refused to impose nuisance liability on a wood chipping mill which was operating in a properly zoned location and which was lawfully conducting activities properly associated with the business of a chip mill, even though neighbors found the activity disruptive.[3] Id.; see also *Anderson v. Atlanta Comm. for Olympic Games, Inc.*, 261 Ga. App. 895, 900 (3) (584 SE2d 16) (2003) (holding that the legally operated Olympic Park was not a nuisance even though its existence attracted a criminal who detonated a deadly bomb at the park).[4]

---

[3] Governors Ridge attempts to distinguish this case on the basis that it involved a specific grant of zoning to a particular business, as opposed to a general zoning designation applicable to an office park comprised of multiple businesses. Nothing in *Shuler Bros.*, however, indicates that the holding is so narrow. Indeed, *Shuler* plainly held that "[b]ecause the chip mill [at issue] was a legal enterprise operated as the law authorized, it cannot have been a nuisance." *Shuler*, 265 Ga. App. at 755.

[4] This present circumstance is distinguishable from *City of Atlanta v. Murphy*, 194 Ga. App. 652 (391 SE2d 474) (1990), relied on by Governors Ridge. There, an improperly maintained landfill was found to be a nuisance because it attracted vermin and smelled bad, and evidence was presented showing it was operated in violation of state regulations. Unlike in *Murphy,* here, there is no evidence the business was being improperly operated.

Moreover, there was no evidence presented at trial that McBrayer provided abortion services in a way which unnecessarily intruded on his neighbors, such that a modification to his abortion practice could have addressed Governors Ridge's complaints; rather, the fact that he provided the service at all is what formed the basis of the claim. Compare *Sumitomo Corp. of America v. Deal*, 256 Ga. App. 703, 709 (5) (569 SE2d 608) (2002) (defendant aware that specific location of its drainage was causing flooding to neighboring property but did nothing to remedy the situation or redesign the drainage system so as not to unnecessarily intrude upon its neighbor).

Governors Ridge correctly points out that Georgia law has recognized that legally operated businesses situated in inappropriate locations can become a nuisance. As the Georgia Supreme Court recognized,

> a nuisance may consist merely of the right thing in the wrong place, regardless of other circumstances . . . If one do an act, of itself lawful, which being done in a particular place, necessarily tends to the damage of another's property, it is a nuisance; for it is incumbent on him to find some other place to do that act where it will not be injurious or offensive. To constitute a nuisance, it is not necessary that the noxious trade or business should endanger the health of the neighborhood. It is sufficient if it produces that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable.

9

*Poultryland, Inc. v. Anderson*, 200 Ga. 549, 556 (1) (37 SE2d 785) (1946). These cases, however, have involved the placement of commercial businesses which are inconsistent with a residential community in residential areas. See *McGowan v. May*, 186 Ga. 79 (196 SE 705) (1938) (funeral home in a residential neighborhood); *Benton v. Pittard*, 197 Ga. 843, 846 (31 SE2d 6) (1944) (venereal disease clinic in residential neighborhood); *Poultryland*, 200 Ga. at 556 (poultry plant in a neighborhood which was both commercial and residential). Unlike those cases, McBrayer's medical practice is not located in the wrong place; it is located in a commercial office park, zoned for medical practices, and which contains other medical practices.

McBrayer's practice is likely to displease some in the community and attract protestors wherever it is located. If we were to hold that a legally-operated abortion clinic cannot even operate in a commercial office park zoned for medical practices without constituting a nuisance we would be, in effect, holding that such clinics cannot properly operate anywhere. As amicus curie correctly point out, such a holding could be used to expose a broad array of legal businesses and institutions to nuisance liability due to the fact that some find them controversial and some will protest their

10

very existence.[5] Both legal protestors and criminals have caused disruption around a multitude of business and institutions, such as gun shops, fur retailers, Chick-Fil-A restaurants, police departments, synagogues, statehouses, Black churches, adult entertainment establishments, and mosques, to name a few. Under the common law, property ownership in Georgia does not guarantee only ideologically-aligned neighbors whose business practices will cause no upset or attract no controversy, and we will not hold otherwise.

Accordingly, the evidence presented at trial does not support a verdict against McBrayer based upon the nature of his medical practice and he is, therefore, entitled to a new trial.

*2. Fear of Violence as the Nuisance*

In addition to finding the nature of McBrayer's business to constitute a nuisance because it was distasteful to some owners and to protestors, Governors Ridge also alleges that the business was a nuisance because it caused the other owners to live in fear for their safety. Specifically, Governor's Ridge points to a

---

[5] We appreciate the filing of two amicus briefs. One was filed jointly on behalf of various law professors, the Firearms Policy Coalition, and the Georgia First Amendment Foundation. Another was filed jointly on behalf of Georgia Abortion Clinics, American College of Obstetricians and Gynecologists, National Abortion Federation, and Society of Family Planning.

single fire in 2012 at McBrayer's practice in the office park as well as other acts of violence perpetrated by criminals elsewhere outside the office park.

As for the fire at McBrayer's business, even assuming it resulted from a targeted attack against McBrayer despite the lack of evidence as to its origin, a single occurrence is insufficient to create a nuisance. *Barnes v. St. Stephen's Missionary Baptist Church*, 260 Ga. App. 765, 769 (2) (580 SE2d 587) (2003) ("A one-time occurrence does not amount to a nuisance. The whole idea of nuisance is that of either a continuous or regularly repetitious act or condition which causes the hurt, inconvenience or injury. A single isolated occurrence or act, which if regularly repeated would constitute a nuisance, is not a nuisance until it is regularly repeated.") (citation, punctuation and emphasis omitted).

With regard to the fear the owners of buildings in Governors Ridge felt as a result of acts of violence perpetrated against other abortion clinics, Governors Ridge has pointed to no law which would authorize a finding of nuisance liability for one property owner based on something that happened somewhere else. We decline to extend nuisance liability in such a manner. To hold otherwise would have dangerous implications. For instance, numerous houses of worship of different religious denominations have fallen victim to hate crimes. By way of example, the fact that one

12

synagogue has been a victim of anti-Semitic violence does not result in other synagogues in other locations having nuisance liability to their neighbors due to a generalized fear of anti-Semitic violence in the neighborhood.

Consequently, the evidence did not support the verdict for a finding of liability based upon fear of criminal activity at the park based on a single fire at McBrayer's practice or acts of violence occurring at other abortion clinics. McBrayer is entitled to a new trial as to this claim as well.

### 3. Loitering, Littering, and Bodily Voiding as a Nuisance

Governors Ridge presented documents and testimony accusing the invitees of McBrayer's practice of loitering, littering, urinating, and defecating in the common areas of the park. The entirety of the evidence of these occurrences consisted of a letter from 1998 and testimony which did not quantify the frequency of these occurrences, but assumed they were perpetrated by McBrayer's patients and the companions of those patients. Specifically, the "loitering" was only ever defined as the companions of patients of McBrayer's practice who were waiting in their cars while the patients received treatment.

As to Governors Ridge's claims of loitering, Georgia law defines the crime of loitering accordingly: "A person commits the offense of loitering or prowling when

13

he is in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." OCGA § 16-11-36 (a). The act of waiting in the parking lot near a medical practice for a patient to receive medical treatment does not meet this definition. Accordingly, the evidence introduced at trial did not support a verdict for nuisance based on the actions characterized as "loitering."

To the extent invitees of the clinic were littering, urinating, or defecating in common areas, that conduct could form the basis for nuisance liability if properly supported. No evidence at trial, beyond mere speculation, actually connected this behavior to anyone affiliated with McBrayer's practice, however, nor did it establish the frequency with which these issues happened. Nonetheless, as stated above, Governors Ridge may be able to support this claim with additional evidence on retrial.

### b. Nuisance Per the Declaration

At trial, Governors Ridge also contended that McBrayer was in breach of the covenants of the Declaration binding all owners in the park. Specifically, Governors Ridge relied on the following covenant:

14

Section 9.09 *Nuisances. No rubbish or debris of any kind shall be dumped, placed, or permitted to accumulate upon any portion of the Development*, nor shall any nuisance or odors be permitted to exist or operate upon or arise from the Development, so as to render any portion thereof unsanitary, unsightly, offensive, or detrimental to persons using or occupying any other portions of the Development. Noxious or offensive activities shall not be carried on in any Parcel or in any part of the Common Areas and each Owner, his invitees, tenants, visitors, guests, servants, and agents, shall refrain from any act or use of a Parcel or of the Common Areas *which could cause disorderly, unsightly, or unkempt conditions, or which could cause embarrassment, discomfort, annoyance, or nuisance to the occupants of other Parcels*, or which could result in a cancellation of any insurance of any Parcel or any portion of the Common Areas, or which would be in violation of any law or governmental code or regulation. . . . Any Owner (including the Occupants of an Owner) who dumps or places any trash or debris upon any portion of the Development shall be liable to the Association for the actual cost of removal thereof or the sum of $100.00, whichever is greater . . . . (Emphasis supplied.)

In 2009, Governors Ridge notified McBrayer that his use of his building constituted a nuisance which breached the Declaration. Specifically, correspondence to McBrayer stated:

As you know, your use of Building 23 ("Subject Premises") has for many years created controversy and, in turn, actions by others outside

15

the Office Park that have had a materially adverse impact on the other owners tenants and guests of the Office Park. Although the level and intensity of the actions of outsiders has risen and fallen over the years their efforts are continuous. As you also know, those activities have included vocal demonstrations outside the walls of the Office Park, trespassing inside the walls, vigorous efforts by demonstrators who often approach visitors to dissuade them from conducting business with anyone inside the Office Park and constant adverse publicity and word of mouth campaigns.

Governors Ridge informed McBrayer that, per the Declarations, it would sanction him for this purported nuisance if not abated, which it ultimately did starting in 2010.

### 1. The Nature of the Clinic and Fear of Violence as a Nuisance

In considering the behavior which can be curtailed and sanctioned via the Declaration, we keep in mind the general rule "that the owner of land has the right to use it for any lawful purpose. Restrictions upon an owner's use of land must be clearly established and must be strictly construed. Moreover, any doubt concerning restrictions on use of land will be construed in favor of the grantee." (Citations and punctuation omitted.) *Douglas v. Wages*, 271 Ga. 616, 617 (1) (523 SE2d 330) (1999). With this guiding principle in mind, the Georgia Supreme Court analyzed a similar restrictive covenant and found it to be "too vague, indefinite and uncertain for

16

enforcement in a court of equity by injunction, except in so far as these words may be included within the definition of a nuisance." (Citation and punctuation omitted.) Id. at 617 (2) ("The covenants at issue [in *Douglas*] state that '[n]o lot shall be used except for residential purposes,' and that '[n]o noxious or offensive activity shall be erected, maintained or conducted upon any lot or any party thereof, nor shall anything be done thereon which may be or may become an annoyance or nuisance in the neighborhood.'"). Because the conduct at issue in *Douglas* was not recognizable as a nuisance under Georgia law, the Supreme Court would not usurp the discretion of the trial court, which denied an injunction to enforce the restrictive covenant. The logic of *Douglas* is sound, and we see no reason why the rule should be different in a case seeking to enforce a vague covenant to obtain money damages. A vague nuisance covenant, such as this one, will only be enforced to permit recovery of money damages to the extent the conduct at issue is included within the definition of a nuisance under common law.

For the reasons discussed in Division 1 (a) (1), the nature of the business being controversial to some and attracting protests does not fit "within the definition of a nuisance." For the reasons discussed in Division 1 (a) (2), neither does the fear of

17

violence it inspired in other owners at Governors Ridge per the evidence introduced at trial. Accordingly, McBrayer is entitled to a new trial.

## 2. *Loitering, Littering, and Bodily Voiding as a Nuisance*

With regard to the activities defined by Governors Ridge as "loitering," for the reasons described in Division 1 (a) (3), the conduct described in the evidence at trial does not fit within the definition of nuisance. As to littering and bodily voiding, however, the Declarations do specifically identify those as prohibited conduct if the evidence supports connecting the behavior to McBrayer. McBrayer is entitled to a new trial as to these issues as well.

In sum, the trial court erred in denying McBrayer's motion for new trial. Accordingly, we reverse the trial court's order and remand this case for proceedings which are consistent with the holdings in this opinion.

2. In light of our holding in Division 1, we need not address the remaining enumerations of error.

*Judgment reversed and case remanded with direction. Miller, P. J., and Pipkin, J., concur.*

18