**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 9, 2024**

# In the Court of Appeals of Georgia

A24A0693; A24A0698.  GREEN MEADOWS HOUSING PARTNERS, LP et al v. MACON-BIBB COUNTY; and vice versa.

DILLARD, Presiding Judge.

In an effort to reduce crime in the affordable housing community of Green Meadows Townhomes, Macon-Bibb County filed a public-nuisance action against the property's owners, Green Meadows Housing Partners, LP, and its related entities.[1] And in an *ex parte* hearing that same day, the County successfully moved the trial court to declare the property a public nuisance and appoint a receiver to take control of the housing complex. GMHP filed an answer and moved to vacate the *ex parte* order; but following an emergency hearing, the trial court reaffirmed the finding that

---

[1] For ease of reference, we will refer to Macon-Bibb County as the "County," and Green Meadows Housing Partners, LP, and its related entities as "GMHP."

the property was a public nuisance, as well as the appointment of the receiver. Subsequently, GMHP appealed, and the County then cross appealed.

In Case No. A24A0693, GMHP contends the trial court erred in (1) denying its motion to vacate the *ex parte* order obtained in violation of its right to due process, and (2) appointing a receiver when the evidence failed to establish a public nuisance and such a remedy is not authorized in nuisance actions. And in Case No. A24A0698, the County contends the trial court erred in ruling that (1) public-nuisance actions are civil in nature, and so the Civil Practice Act applies to such actions, and (2) GMHP was entitled to due process of any kind. For the following reasons, we reverse and vacate the trial court's rulings in Case No. A24A0693, and affirm its rulings in Case No. A24A0698.[2]

When the trial court is the factfinder, we construe the evidence in "the light most favorable to support the court's judgment and will uphold the court's factual

---

[2] Oral argument was held in these consolidated cases on April 10, 2024, and is archived on the Court's website. *See* Court of Appeals of the State of Georgia, Oral Argument, Case Nos. A24A0693 and A24A0698 (Apr. 10, 2024), *available at* https://vimeo.com/934571609.

findings on appeal if there is any evidence to support them."[3] But as to questions of law, we "employ a de novo standard of review."[4] Indeed, when a question of law is at issue, as here, "we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review."[5]

So viewed, the largely undisputed record shows that GMHP acquired the affordable housing complex at issue—the "Property"—in April 2021. Prior to GMHP's acquisition, the Property had a history of crime problems and was an area of concern for the local sheriff's office. But since its acquisition, GMHP invested approximately $12,400,000 toward rehabilitating the Property, including, *inter alia*, renovating flooring, cabinets, plumbing, roofing, appliances, exterior doors, exterior lighting, and electrical wiring. Importantly, GMHP also invested significant resources in security improvements—including hiring armed security guards, installing security

---

[3] *Smith v. Millsap*, 364 Ga. App. 162, 163 (874 SE2d 184) (2022) (punctuation omitted); *accord McWay v. McKenney's, Inc.*, 359 Ga. App. 547, 547-48 (859 SE2d 523) (2021).

[4] *Smith*, 364 Ga. App. at 163 (punctuation omitted); *accord McWay*, 359 Ga. App. at 548.

[5] *Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011) (punctuation omitted).

cameras with a direct feed to law enforcement, providing solar-powered lighting, closing one of the entrances to limit access to the complex, placing license-plate readers at the remaining entrances, and instituting a curfew from 9:00 p.m. to 6:00 a.m. to decrease loitering. And following a compliance review on June 30, 2023, the U.S. Department of Housing and Urban Development ("HUD") deemed security at the Property acceptable.

Additionally, GMHP hired an experienced property management company—approved and certified by HUD and the Georgia Department of Community Affairs—to manage the Property and enforce lease compliance. Toward that end, in 2022, the management company bought out 11 leases—at a cost of $60,000—from lessees who were deemed "difficult" but not subject to eviction due to restrictions in place during the COVID-19 pandemic. In June and July 2023, the management company notified at least five tenants of their non-compliance with lease requirements related to curfew violations, and it terminated four leases based on the residents' unruly behavior. Additionally, the management company was tasked with communicating with local law enforcement and, in fact, met with the sheriff's office in January 2023 to discuss ways to reduce criminal activity on the Property—including

4

more frequent patrols, providing the Property's entire rent roll, and agreeing to allow law enforcement access to the units.

Nevertheless, on August 4, 2023, the County filed a complaint against GMHP in the Superior Court of Bibb County, seeking a declaration that the Property was a public nuisance based on the criminal activity of third parties and requesting appointment of a receiver to take control of the Property and institute measures it deemed necessary to abate the nuisance. That same day, *without notifying GMHP*, the trial court held a hearing, which only the County's counsel and a law-enforcement officer attended. Immediately following this hearing, the trial court issued a sweeping *ex parte* order, finding the Property to be a public nuisance and appointing a receiver "over [the Property] and the Defendants who control it, including but not limited to all money, receivables, assets, contracts, and all tangible property each legal entity associates therewith." The order also required GMHP "to surrender complete control of the Property" to the receiver and to turn over "all books, records, security deposits, leases and rental contracts, computers, and information relating to [the Property]." The trial court's *ex parte* order further "restrained and enjoined [GMHP] from interfering in any way with the Receiver's access to the Property or with the

Receiver's management of the Property or the operations thereon during the pendency of this action . . . ," and it prohibite]d GMHP from "access[ing] the Property or any . . . account thereof except upon arrangement with the Receiver . . . ."

One week later, the County served GMHP with the complaint. And shortly thereafter, GMHP filed an answer, an emergency motion to vacate the order appointing the receiver, and an emergency motion for an expedited hearing. A different judge than the one who issued the *ex parte* order held a hearing on September 18, 2023, during which both parties presented arguments and evidence. In addition to advocating for the *ex parte* order to be affirmed, the County also argued that GMHP was not entitled to due process and that its abatement action was not civil but, rather, quasi-criminal in nature. At the conclusion of the hearing, the new judge took the matter under advisement and allowed the parties to file post-hearing briefs.

On October 19, 2023, the trial court issued an order denying GMHP's motion to vacate. In its order, the court found there was no error in appointing the receiver on an ex parte basis, but it nonetheless reappointed the receiver while rejecting the

County's contention that neither due process nor the Civil Practice Act applied to its abatement action. GMHP's appeal and the County's cross appeal then followed.

*Case No. A24A0693*

1. GMHP first contends the trial court erred in granting the *ex parte* order appointing the receiver, arguing that doing so violated its due-process rights to notice and a hearing. We agree.

It is well established that both the federal and Georgia Constitutions prohibit the state from "depriving any person of life, liberty, or property, without due process of law."[6] Indeed, property ownership in the United States is "a fundamental constitutional right, and [citizens] are entitled to the procedural safeguards enshrined by our state and federal constitutions *before* the government may lawfully deprive them

---

[6] *Atlanta City School Dist. v. Dowling*, 266 Ga. 217, 218 (466 SE2d 588) (1996) (punctuation omitted); *accord Schumacher v. City of Roswell*, 344 Ga. App. 135, 138 (809 SE2d 262) (2017); *see* U.S. CONST. amend. XIV, Sec. 1 ("... nor shall any State deprive any person of life, liberty, or property, without due process of law ...."); GA. CONST., Art. I, Sec. I, Par. I. ("No person shall be deprived of life, liberty, or property except by due process of law."); *see also In re Inquiry Concerning a Judge*, 275 Ga. 404, 408 (566 SE2d 310) (2002) ("It is axiomatic that notice and an opportunity to be heard are the cornerstones of the Due Process rights guaranteed by our Federal and Georgia Constitutions.").

of their property rights."[7] As a result, a trial court has "a solemn duty to ensure that before any citizen is deprived of real or personal property that he or she has been afforded due process of law."[8] And importantly, due process of law as guaranteed by

---

[7] *Morgan v. State of Ga.*, 323 Ga. App. 853, 856-57 (4) (748 SE2d 491) (2013) (emphasis added); *see United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (II) (114 SCt 492, 126 LE2d 490) (1993) (holding that Supreme Court "precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property" (punctuation omitted)); *see also* U.S. Const. amend. V & XIV; Ga. Const. art. 1, para. 1 & 2; THURSTON GREENE, THE LANGUAGE OF THE CONSTITUTION 614 (Greenwood Press 1991) ("[C]ivil liberty is sufficiently guarded when personal security, personal liberty, and private property, are made the peculiar care of government . . . ." (quoting William Pierce's letter to St. George Tucker, September 28, 1787, published in Gazette of the State of Georgia, March 20, 1788)); Walter McElreath, A TREATISE ON THE CONSTITUTION OF GEORGIA § 1103 (Harrison Company 1912) ("The right of private property is sacred in the eyes of the law and stands upon the same foundation as the coordinate rights of personal liberty and personal security . . . .").

[8] *Morgan*, 323 Ga. App. at 857 (4); *see also Sec. & Exch. Comm'n v. Jarkesy*, ___ U. S. ___ (144 SCt 2117, 2144–45) (2024) (Gorusch, J., concurring) (noting that the "Fifth Amendment's Due Process Clause . . . as originally understood . . . prohibited the government from depriving a person of those rights without affording him the benefit of (at least) those customary procedures to which freemen were entitled by the old law of England . . . More than that, because it was the peculiar province of the judiciary to safeguard life, liberty, and property, due process often meant judicial process . . . That is, if the government sought to interfere with those rights, nothing less than the process and proceedings of the common law had to be observed before any such deprivation could take place . . . In other words, due process of law generally implied and included . . . judex [a judge], regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings.") (cleaned up).

the federal and state constitutions "includes notice and hearing as a matter of right where one's property rights are involved."[9]

Here, it is undisputed the trial court did not provide GMHP with *any* notice or hearing prior to issuing an *ex parte* order appointing a receiver and granting that receiver virtually unfettered control over all aspects of the Property's management. Put in more stark terms, the County took away a business's private property with absolutely no due process. By doing so, in addition to ignoring the Supreme Court of Georgia's admonition that "judges must scrupulously avoid ex parte communications[,]"[10] the trial court violated GMHP's right to procedural due process under both the Georgia and federal Constitutions.[11] And although the *ex parte* order

---

[9] *Dansby v. Dansby*, 222 Ga. 118, 120 (1) (149 SE2d 252) (1966); *accord Schumacher*, 344 Ga. App. at 138; *see James Daniel Good Real Prop.*, 510 U.S. at 48 (II) (holding that Supreme Court "precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property" (punctuation omitted)).

[10] *Cousins v. Macedonia Baptist Church of Atlanta*, 283 Ga. 570, 574 (1) (662 SE2d 533) (2008) (punctuation omitted); *accord Ivey v. Ivey*, 264 Ga. 435, 438 (3) (445 SE2d 258) (1994).

[11] *See Griggs v. City of Macon*, 154 Ga. 519, 527-28 (3) (114 SE 899) (1922) (holding declaration that hotel proprietor was conducting a lewd house, and thus a nuisance, without notice and hearing would deprive proprietor of due process of law in violation of federal and state Constitutions); *see also James Daniel Good Real Prop.*,

implies that it is not permanent (albeit without providing *any* specifics as to its expiration given its "until further order" language), its alleged transience is irrelevant as "it is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment."[12]

Even so, the County argues the *ex parte* order appointing a receiver did not deprive GMHP of a constitutionally protected property right. But this argument strains credulity and is foreclosed by binding precedent. As discussed *supra*, the trial court's *ex parte* order required GMHP to "surrender complete control of the

---

510 U.S. at 62 (II) (concluding that unless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture); *Conn. v. Doehr*, 501 U.S. 1, 17-18 (III) (111 SCt 2105, 115 LE2d 1) (1991) (holding Connecticut statute authorizing prejudgment attachment of real estate which did not provide pre-attachment hearing or require showing of some exigent circumstances, did not satisfy due process requirements); *Fuentes v. Shevin*, 407 U.S. 67, 96 (VIII) (92 SCt 1983, 32 LE2d 556) (1972) (holding Florida and Pennsylvania prejudgment replevin statutes that deny right to prior opportunity to be heard unlawfully work a deprivation of property without procedural due process).

[12] *Fuentes*, 407 U.S. at 84-85 (V) (A); *see Doehr*, 501 U.S. at 12 (III) (explaining "that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection"); *see also Pizza Hut of Am., Inc. v. Kesler*, 254 Ga. 360, 360 (2) (329 SE2d 133) (1985) (noting that "[d]ue process must be preserved at the expense of judicial economy.").

Property" to the receiver and significantly restricted its use and even access to the Property. And contrary to the County's assertion, the Supreme Court of Georgia has explained that the appointment of a receiver amounts to a deprivation of property with constitutional implications.[13] Moreover, the Supreme Court of the United States has found even less draconian deprivations of property unlawful, holding that the prejudgment attachment of real estate without prior notice or hearing was unconstitutional, even though such an attachment—unlike here—did not interfere with the owner's use or possession and did not affect, as a general matter, rentals from existing leaseholds.[14]

Unabashed, the County also maintains that GMHP was not entitled to notice or a hearing prior to the trial court issuing the *ex parte* order because the Property was

---

[13] *See Frankel v. Frankel*, 212 Ga. 643, 644 (2) (94 SE2d 728) (1956) (explaining the constitutional mandate that the citizen and his property be protected, and that such protection is not afforded when courts, by the appointment of receivers, deprive the citizen of the possession of his property where his right thereto has not been forfeited under some rule of law); *see also Cleveland v. Tully*, 232 Ga. 377, 379 (4) (207 SE2d 18) (1974) ("The high prerogative act of taking property out of the owner's hands and putting it in pound, under the order of a judge, ought not to be taken, except to prevent manifest wrong imminently impending.").

[14]*Doehr*, 501 U.S. at 11-12 (III).

a nuisance. In addition to demonstrating a classic example of begging the question, however, this argument lacks merit.

OCGA § 41-1-1 defines a nuisance as "anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." And it is certainly true that nuisances by "the common law, by statute, and such as are nuisances per se, can be abated without notice and a hearing."[15] But importantly, a nuisance at law or a nuisance *per se* is "an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings."[16] This is not such a case. Indeed, as our Supreme Court has held, "[a]partment houses and multi-family dwellings are not nuisances per se."[17] So, despite the County's characterization,

---

[15] *Griggs*, 154 Ga. at 528 (3); *see City of Atlanta v. Aycock*, 205 Ga. 441, 442 (6) (53 SE2d 744) (1949) ("To determine what is by law a nuisance is an exercise of judicial power, and only those things which are by the common or statute law declared to be nuisances per se, or which in their very nature are such, may be summarily suppressed.").

[16] *Barnes v. St. Stephens Missionary Baptist Church*, 260 Ga. App. 765, 769 (2) n.3 (580 SE2d 587) (2003) (punctuation omitted); *accord Simpson v. DuPont Powder Co.*, 143 Ga. 465, 466 (2) (85 SE 344) (1915).

[17] *Moore v. Mayor, etc. of Statesboro*, 228 Ga. 619, 620 (2) (187 SE2d 531) (1972).

GMHP owned and operated an affordable housing complex—a legitimate undertaking and not a nuisance per se—and, therefore, it was entitled to notice and a hearing prior to the Property being declared a nuisance.[18]

Finally, in its order denying GMHP's motion to vacate the *ex parte* order and affirming the appointment of the receiver, the second judge found no error in the procedure resulting in the *ex parte* order but concluded that, regardless, the evidentiary hearing held more than a month *after* the receiver was appointed—in which GMHP was able to participate—satisfied any due-process concerns. In doing so, the second judge erred. As the Supreme Court of the United States has explained,

> [i]f the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary

---

[18] *See Griggs*, 154 Ga. at 528 (3) (explaining that because the defendant was ostensibly conducting a lawful business in operating a hotel, the ostensible thing which he is doing is legitimate and above reproach, and whether it is a nuisance must first be determined in a proceeding in which he had notice and opportunity to be heard).

taking that was subject to the right of procedural due process has already occurred.[19]

The Supreme Court of the United States then further admonished that it had "not embraced the general proposition that a wrong may be done if it can be undone."[20] Instead, our nation's highest court insisted that, "whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes effect."[21] Consequently, we are not remotely persuaded that the hearing held more than a month after GMHP was forced to surrender complete control of its property to the receiver in any way cured the *ex parte* order's blatant and egregious violation of GMHP's right to due process.[22] The harm of the original deprivation remained, and could not be remedied with a *post hoc* proceeding.

2. GMHP also contends the trial court's orders erred in finding the evidence established that the Property constituted a public nuisance. But because we conclude the trial courts' findings in this regard failed to apply the proper analysis to the

---

[19] *Fuentes*, 407 U.S. at 81-82 (IV).

[20] *Id.* at 82 (IV) (punctuation omitted).

[21] *Id.*

[22] *See supra* note 10 & accompanying text.

evidence, we vacate those findings and remand for further consideration of the issue in a manner consistent with this opinion.

OCGA § 41-1-1 defines a nuisance as anything causing "hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." And in explaining the classes of nuisances, OCGA § 41-1-2 provides: "Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals." Significantly, with regard to the latter, this does not mean "the condition allegedly causing the nuisance must have actually hurt or injured everyone in the area, but it does mean that it must injure those of the public who actually come in contact with it."[23]

And importantly, under Georgia law, in order to be held liable for nuisance, "ownership of land by the tortfeasor is not an element, but control is; the essential

---

[23] *White v. Ga. Power Co.*, 265 Ga. App. 664, 668 (2) (595 SE2d 353) (2004); *see City of Douglasville v. Queen*, 270 Ga. 770, 774 (4) (514 SE2d 195) (1999) ("This language is not used in the sense that every person in the area must have been actually hurt or injured in order to show a public nuisance. It is sufficient if it injures those of the public who may actually come in contact with it." (punctuation omitted)).

element of nuisance is control over the cause of the harm."[24] In other words, the tortfeasor must "be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance."[25] Indeed, causation is "an essential element of nuisance, trespass, and negligence claims."[26] So, in nuisance cases, in order to establish proximate cause, a plaintiff "must show a legally attributable causal connection between the defendant's conduct and the alleged injury."[27] Additionally, in the context of criminal activity by third parties on property under a defendant's control (and similar to our State's premises liability law),[28] the Restatement (2nd) of

---

[24] *McBrayer v. Governor's Ridge Office Park Ass'n, Inc.*, 359 Ga. App. 741, 744 (1) (a) (860 SE2d 58) (2021) (punctuation omitted); *accord Terry v. Catherall*, 337 Ga. App. 902, 905 (1) (789 SE2d 218) (2016).

[25] *McBrayer*, 359 Ga. App. at 744 (1) (a) (punctuation omitted); *accord Terry*, 337 Ga. App. at 905 (1).

[26] *Toyo Tire N. Am. Mfg., Inc. v. Davis*, 299 Ga. 155, 158 (2) (787 SE2d 171) (2016) (punctuation omitted).

[27] *Id.* at 158 (2) (punctuation omitted).

[28] *See Ga. CVS Pharmacy, LLC v. Carmichael*, 316 Ga. 718, 723 (II) (A) (890 SE2d 209) (2023) (explaining that to hold premises owner liable for injury to a plaintiff based on a third-party criminal act requires a finding that third-party criminal conduct was reasonably foreseeable and a determination of whether the owner acted reasonably in the face of the particular foreseeable risk or whether the owner breached its duty to do so).

Torts § 838—titled "Possessor Who Fails to Prevent Nuisance Caused by Activity"—provides:

> A possessor of land upon which a third person carries on an activity that causes a nuisance is subject to liability for the nuisance if it is otherwise actionable, and
>
> (a) the possessor knows or has reason to know that the activity is being carried on and that it is causing or will involve an unreasonable risk of causing the nuisance, and
>
> (b) he consents to the activity or fails to exercise reasonable care to prevent the nuisance.[29]

Further, as explained in Comment g of that section,

> [i]n order for the possessor to be liable for his failure to act, it is necessary that he know or have reason to know that the activity is being carried on and that it is causing or is likely to cause the nuisance, as stated in Clause (a). The mere fact that he permits the third person to be upon the land or to do something there, or that he knows of his presence

---

[29] RESTATEMENT (2ND) OF TORTS § 838 (1979); *see Citizens & S. Tr. Co. v. Phillips Petroleum Co., Inc.*, 192 Ga. App. 499, 500 (3) (385 SE2d 426) (1989) ("A party is not guilty of an actionable nuisance unless the injurious consequences complained of are the natural and proximate results of his own acts or failure of duty. If such consequences were caused by the acts of others, so operating as to produce the injury, he would not be liable." (punctuation omitted)).

or even of the particular activity is not enough to make him liable for the nuisance. When, however, he knows or has reason to know that the nuisance is resulting or is likely to result, he is under a duty to exercise reasonable care to prevent it.[30]

Comment g also helpfully explains that:

> [w]hat is reasonable care will depend upon the circumstances. The possessor is not required in all cases to put a stop to the activity if it is possible to abate the nuisance without doing so. Normally, by virtue of his rights in the land and his control of it, the possessor is in a position to prevent the conduct of his licensees or even of trespassers by a mere protest or at most by calling the police. If he fails to take these simple and easy steps, he may be subject to liability. He is, however, not required to do more than is reasonable; and when the nuisance can be prevented only by measures involving great effort and expense and in proportion the harm caused by the nuisance is relatively slight, the possessor is not liable if he fails to adopt the measures to prevent it.[31]

Here, the trial court's order denying GMHP's motion to vacate the appointment of the receiver found the criminal activity frequently occurring on the Property constituted a nuisance of which GMHP was aware but had not prevented.

---

[30] RESTATEMENT (2ND) OF TORTS § 838 cmt. g.

[31] *Id.*

But while the court briefly noted the security measures GMHP had undertaken for the benefit of the Property and its residents, at no point did it discuss whether those measures satisfied GMHP's duty to exercise *reasonable care* or, if not, what more was required to fulfill that duty. As a result, the trial court failed to apply the relevant legal standard in its determination that GMHP was liable for failing to prevent the nuisance, and so we vacate this finding and remand the case for further consideration in a manner consistent with this opinion.[32]

3. Finally, GMHP contends the trial court erred in appointing a receiver, arguing it is an unauthorized remedy in nuisance actions. Again, we agree.

In its order denying GMHP's motion to vacate, the trial court conceded that the appointment of a receiver to abate a public nuisance is unprecedented. This is hardly surprising given that our Supreme Court has explicitly held that "[i]n the

---

[32] *See Smith v. Northside Hosp., Inc.*, 302 Ga. 517, 520 (807 SE2d 909) (2017) (explaining "the application of the wrong legal standard may be reversible error," and remanding for trial court to apply correct legal standard); *Glass v. Faircloth*, 363 Ga. App. 232, 237-38 (2) (871 SE2d 69) (2022) (vacating trial court's order and remanding for further consideration given that trial court failed to apply the proper legal standard in determining whether to grant an interlocutory injunction); *Coleman v. DaimlerChrysler Servs. of N. Am.*, 276 Ga. App. 336, 339 (623 SE2d 189) (2005) (vacating order and remanding case for consideration under the proper legal framework).

absence of any statutory expansion of equity jurisdiction, a public nuisance may be abated in equity *by injunction only*."[33] Nevertheless, in support of its decision to appoint a receiver (in that same order), the trial court cited OCGA § 9-8-1, which provides: "When any fund or property is in litigation and the rights of either or both parties cannot otherwise be fully protected or when there is a fund or property having

---

[33] *Davis v. Stark*, 198 Ga. 223, 230 (31 SE2d 592) (1944) (emphasis supplied); *see Davis v. State*, 199 Ga. 839, 843 (3) (35 SE2d 458) (1945) (noting that the predecessor of the current abatement statute "so far as it provides for a suit in equity by the solicitor-general, on information, to abate a public nuisance, does not contemplate an abatement otherwise than by injunction").

no one to manage it, a receiver of the same may be appointed by the judge of the superior court having jurisdiction thereof." But as both parties and the trial court that issued the *ex parte* order agreed, this statute is not applicable. Rather, the *codified* purpose of a receivership is to "preserve the property which is the subject of the litigation, and to provide full protection to the parties' rights to the property until a final disposition of the issues."[34] And here, the County—as it acknowledges—is not asserting a right *to* or *in* the Property as contemplated by the statute.[35] So, although the County argues the trial court had general plenary power to abate a nuisance in any manner it saw fit, it fails to point to statutory authority or binding Georgia caselaw affirming the appointment of a receiver in any factual situation even remotely analogous to this one. As a result, given the absence of any legal basis supporting the appointment of the receiver, the trial court abused its discretion in ordering the appointment.[36] Accordingly, we reverse that aspect of its ruling.

---

[34] *Chrysler Ins. Co. v. Dorminey*, 271 Ga. 555, 556 (1) (522 SE2d 323) (1999).

[35] *Cf. Alstep, Inc. v. State Bank and Trust Co.*, 293 Ga. 311, 314 (4) (a) (745 SE2d 613) (2013) (holding that property that was the subject of a dispossessory action was "in litigation" for purposes of OCGA § 9-8-1).

[36] *See Patel v. Alpha Inv. Props., Inc.*, 265 Ga. 597, 597-98 (2) (458 SE2d 476) (1995) (holding trial court could not appoint receiver for corporation, in litigation over

4. In its cross appeal of the trial court's order denying GMHP's motion to vacate, the County contends the trial court erred in ruling both that public nuisance abatement actions are civil actions and the Civil Practice Act[37] applies. We disagree.

In its response to GMHP's motion to vacate the appointment of the receiver, the County argued that abatement actions are not civil actions but, rather, are quasi-criminal in nature. But in its order denying GMHP's motion to vacate, the trial court expressed skepticism of this argument and noted its belief that the Civil Practice Act applied regardless. The court's skepticism was entirely justified. As our Supreme Court has explicitly held, a proceeding to abate a common nuisance is indeed a civil

control of corporation, absent some statutory basis for receiver's appointment).

[37] OCGA § 9-11-1 *et seq.*

suit.[38] More specifically, a suit to enjoin a nuisance is "in equity."[39] And further belying the County's contention, this Court has held that because a court in a "proceeding to determine the existence of a nuisance, could not fine or imprison the defendant in error, such proceeding was not criminal or quasi criminal in nature[.]"[40]

Finding no support in Georgia caselaw for its position, the County cites to a solitary United States District Court decision it finds apposite. In *State of Georgia v. Fleck & Associates, Inc.*,[41] the State sought to enjoin the operation of a nightclub that

---

[38] *See Burgess v. State*, 221 Ga. 586, 587 (146 SE2d 288) (1965); *see also Chancey v. Hancock*, 233 Ga. 734, 736-37 (3) (213 SE2d 633) (1975) (explaining that an action to abate a nuisance under Code 1933, § 72-202—now OCGA § 41-2-2—is a complaint in equity and "is not a criminal prosecution"); *Malcolm v. Webb*, 211 Ga. 449, 453 (1) (86 SE2d 489) (1955) (noting that under Code 1933, § 72–202, the solicitor-general is authorized to prosecute or defend any civil action in which the State is interested including abatement of nuisances).

[39] *Life for God's Stray Animals, Inc. v. New North Rockdale Cnty. Homeowners Ass'n*, 253 Ga. 551, 553 (4) (322 SE2d 239) (1984); *see Elder v. Stark*, 200 Ga. 452, 469 (10) (37 SE2d 598) (1946) (concluding the relief provided in a case to abate a nuisance partakes of the nature of an equitable proceeding); *Davis*, 199 Ga. at 843 (3) (noting that the predecessor of the current abatement statute "provides for a suit in equity"); *State v. Ball Inv. Co.*, 191 Ga. 382, 389 (2) (12 SE2d 574) (1940) (holding a court of equity will in a proper case take jurisdiction of a suit to enjoin a nuisance).

[40] *City of Atlanta v. Pazol*, 95 Ga. App. 598, 600 (98 SE2d 216) (1957) (punctuation omitted).

[41] 622 FSupp 256 (N.D. Ga. 1985).

it deemed a nuisance based on allegations that the club's predominant function was as a meeting place for men violating the State's anti-sodomy laws.[42] And after the defendant sought removal based on diversity jurisdiction,[43] the district court remanded the case to state court noting, "a suit by a state to vindicate its criminal laws by enjoining violations thereof, and suits of a related nature, have been held not be civil in nature for removal purposes."[44] As a result, the district court concluded "this action resembles a criminal proceeding more than it resembles a civil proceeding and is thus nonremovable."[45]

And based on what it claims are similarities to this case, the County argues *Fleck* supports its position that abatements of public nuisances are quasi-criminal in nature and not civil. But even if we agreed that *Fleck* is factually analogous, "we are not bound by the reasoning or holding of a federal district court's decision."[46] In any

---

[42] *See id.* at 257.

[43] *See* 28 USC § 1441 (a) (providing for removal of any "civil action").

[44] *Fleck & Assoc.*, 622 FSupp at 258.

[45] *Id.*

[46] *Mulkey v. State*, 366 Ga. App. 427, 433 (1) (883 SE2d 173) (2023); *see Southstar Energy Servs., LLC v. Ellison*, 286 Ga. 709, 713 (1) (691 SE2d 203) (2010) ("While we are at liberty to consider such authority, the appellate courts of this state

event, we do not agree the situations are as similar as the County maintains. In *Fleck*, the district court noted that the State was essentially criminally penalizing the defendant with fines and forfeiture for *permitting* violations of the criminal laws.[47] But in stark contrast, here, while a dispute remains as to whether GMHP made sufficient efforts to reduce crime on the Property, the efforts it *has* made to improve security cannot possibly be construed as permissive even under the County's recitation of the facts. Finally, and further belying the County's contention that abatements of public nuisances are unequivocally quasi-criminal, the district court in *Fleck* acknowledged that—despite its ruling—it did "not intend to suggest that all actions to abate a public nuisance are necessarily non-civil in nature."[48]

Furthermore, given that our caselaw overwhelmingly characterizes abatement actions as civil actions in equity, it stands to reason that the Civil Practice Act applies

---

are not bound by decisions of federal courts except the United States Supreme Court." (punctuation omitted)).

[47] *See Fleck & Assoc.*, 622 FSupp at 257-58.

[48] *Id.* at 258, n.6.

to such actions. Indeed, OCGA § 9-11-1 provides: "This chapter governs the procedure in all courts of record of this state in all actions of a civil nature whether cognizable as cases at law or in equity, with the exceptions stated in Code Section 9-11-81." And explaining those exceptions, OCGA § 9-11-81 in turn provides:

> This chapter shall apply to all special statutory proceedings except to the extent that specific rules of practice and procedure in conflict herewith are *expressly prescribed by law*; but, in any event, the provisions of this chapter governing the sufficiency of pleadings, defenses, amendments, counterclaims, cross-claims, third-party practice, joinder of parties and causes, making parties, discovery and depositions, interpleader, intervention, evidence, motions, summary judgment, relief from judgments, and the effect of judgments shall apply to all such proceedings.[49]

By way of example, the Quiet Title Act[50] delineates specific rules and procedures that govern its terms, and its statutory provisions control to the extent they conflict with the Civil Practice Act.[51] Similarly, actions to revive dormant judgments under OCGA

---

[49] (Emphasis supplied).

[50] OCGA § 23-3-60 *et seq*.

[51] *See Woodruff v. Morgan Cnty.*, 284 Ga. 651, 652 (1) (670 SE2d 415) (2008) (holding that "contrary to the procedures that might otherwise be sufficient to effect proper service and require that a responsive pleading be filed under the Civil Practice

§ 9-12-60 *et seq.* are special statutory proceedings that explicitly provide for procedures different than standard civil actions.[52] Again, in stark contrast, our caselaw is replete with nuisance-abatement actions proceeding within the context of the Civil Practice Act.[53]

---

Act, the Quiet Title Act requires that, in an in rem quiet title action, a special master must first be appointed who determines 'who is entitled to notice' and who '[c]ause[s] process to issue [in accordance with the Act]' before a party is required to file a responsive pleading" (punctuation omitted)).

[52] *See Mancuso v. Cadles of W.Va., LLC*, 370 Ga. App. 347, 352 (897 SE2d 486) (2024) (explaining specific rule of practice and procedure for service of a copy of the scire facias is narrower and conflicts with the broader rule of practice and procedure for service of a summons set out in the CPA, and thus, the specific rule for service controls).

[53] *See Life for God's Stray Animals, Inc.*, 253 Ga. at 553 (4) (concluding that in order to preserve right to jury trial on question of damages in nuisance action under the Civil Practice Act, jury trial on damage question should have been held prior to nonjury trial of permanent injunction issue); *Cawthon v. Douglas Cnty.*, 248 Ga. 760, 764 (1) (286 SE2d 30) (1982) (holding section of Civil Practice Act preserving right to jury trial as to claims for damages when tried with equity case did not create right to trial by jury in permanent injunction hearing to abate nuisance); *Chancey*, 233 Ga. at 735 (1) (allowing the use of a rule nisi as process in lieu of a summons in a nuisance abatement action proceeding under the Civil Practice Act); *J.D. Jewell, Inc. v. Hancock*, 226 Ga. 480, 486 (5) (175 SE2d 847) (1970) (holding in nuisance abatement action proceeding under the Civil Practice Act, evasive answer to an allegation in a complaint would be treated as an admission just as such had been treated prior to its enactment); *Chancey v. Hancock*, 225 Ga. 715, 716 (171 SE2d 302) (1969) (acknowledging in context of public nuisance action that Civil Practice Act's allowance for notice pleading nevertheless required complaint to include facts

Even so, the County maintains that nuisance-abatement actions are quasi-criminal in nature rather than civil. Specifically, the County argues the caselaw explicitly characterizing abatement as a civil suit in equity is no longer relevant because it pre-dates changes made in 1980 and 1981 to the nuisance-abatement statutes, which (it contends) effectively transformed abatement into a quasi-criminal action. But based on our review of these statutes, we are not persuaded.

We necessarily begin this aspect of our analysis with "familiar and binding canons of construction."[54] And in considering the meaning of a statute, our charge as an appellate court is to "presume that the [legislative body] meant what it said and said what it meant."[55] Toward that end, we must afford the statutory text its plain and ordinary meaning,[56] consider the text contextually,[57] read the text "in its most natural

demonstrating proper venue).

[54] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *accord In the Interest of L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014).

[55] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 517 (1).

[56] *See Holcomb*, 329 Ga. App. at 517 (1); *accord Deal*, 294 Ga. at 172 (1) (a); *see also Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015) ("A statute draws it meaning, of course, from its text." (punctuation and citation omitted)); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original [or] plain

and reasonable way, as an ordinary speaker of the English language would,"[58] and seek

to "avoid a construction that makes some language mere surplusage."[59] In sum, when

---

meaning of the text at issue (and all that the text fairly implies), as well as with faithfully following the precedents established by higher courts."); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning. . . ." (punctuation omitted)); Scherr v. Marriott Intern., Inc., 703 F.3d 1069, 1077 (7th Cir.2013) (Manion, J.) ("In statutory construction cases, we begin with the language of the statute itself and the specific context in which that language is used.") (punctuation and citation omitted); OCGA § 1–3–1(b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words....").

[57] *See Ariz. v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 10 (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *Scherr v. Marriott Intern., Inc.*, 703 F3d 1069, 1077 (7th Cir. 2013) (Manion, J.) ("In statutory construction cases, we begin with the language of the statute itself and the specific context in which that language is used.") (punctuation and citation omitted); *accord Hendry v. Hendry*, 292 Ga. 1, 3 (1) (734 SE2d 46) (2012); *Holcomb*, 329 Ga. App. at 517 (1); *see also Tibbles*, 297 Ga. at 558(1) ("The common and customary usages of the words are important, but so is their context." (punctuation and citation omitted)).

[58] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Holcomb*, 329 Ga. App. at 518 (1).

[59] *In the Interest of L. T.*, 325 Ga. App. at 592 (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 518 (1).

the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[60]

Turning to the statutes at issue, Code 1933, § 72-201 provided:

Any nuisance which tends to the immediate annoyance of the citizens in general, is manifestly injurious to the public health or safety, or tends greatly to corrupt the manners and morals of the people may be abated and suppressed by the order of any two or more justices of the peace of the county, founded upon the verdict of 12 freeholders of the same county, who shall be summoned, sworn, and impaneled for that purpose; which order shall be directed to and served by the sheriff of the county or his deputy.

And following the 1980 and 1981 amendments to the statute,[61] it now provides:

Upon filing of a petition as provided in Code Section 41-2-2, any nuisance which tends to the immediate annoyance of the public in general, is manifestly injurious to the public health or safety, or tends greatly to corrupt the manners and morals of the public may be abated by

---

[60] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[61] *See* Ga. L. 1980, p. 620, § 1; Ga. L. 1981, p. 867, § 1.

order of a judge of the superior court of the county in which venue is proper.[62]

The County claims the amendment adding the phrase "[u]pon filing of a petition" allows a judge to order an abatement "immediately" after a petition is filed and reflects the "intent" of the General Assembly to streamline the nuisance-abatement process by jettisoning the pesky inconveniences of notice and a hearing, as well as the requirements of the Civil Practice Act. But there is no support in our statutory or case authority for the County's contention that "upon" necessarily means "immediately." Indeed, contrary to the County's argument, the word "upon" is not a verb but most commonly acts as a preposition, and when used in a temporal context typically means "[d]enoting the day of an occurrence" or "[o]n the occasion of . . . ."[63] Similarly, in its archaic use as an adverb, "upon" means "[o]n or upon that (in time or order); thereafter, thereupon . . . ."[64] And while upon can mean—also in an archaic form and far down the list of common definitions in the Oxford English

---

[62] OCGA § 41-2-1.

[63] The Compact Oxford English Dictionary 2199 (2nd. Ed. 1991).

[64] *Id.*

Dictionary—"immediately after[,]"[65] our Supreme Court has explained that this is not its exclusive meaning but, rather, "is used to designate or denote the time at which anything happens; it may mean before, after, or simultaneously with the fact to which it relates, and is often employed in the sense of after, contemporaneously with, or shortly after, as soon as, at, or at the time of, or after, or when."[66]

This, of course, comports with how "upon" is construed throughout our Code. For example, the declaratory-judgment statute—OCGA § 9-4-2 (a)—provides: "In cases of actual controversy, the respective superior courts of this state and the Georgia State-wide Business Court shall have power, *upon petition or other appropriate pleading*, to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed . . . ."[67] And in sanctioning abusive-litigation tactics, OCGA § 9-15-14 (b), in part, provides:

> The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, *upon the*

---

[65] *Id.*

[66] *Ross v. Jones*, 151 Ga. 425, 427-28 (1) (107 SE 160) (1921) (punctuation omitted); *accord Lindenberg v. First Fed. Sav. and Loan Ass'n*, 90 FRD 255, 260 (I) (N.D. Ga. 1981).

[67] (Emphasis supplied).

*motion* of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment . . . .[68]

Finally, in outlining the procedure for seeking protective orders during discovery, OCGA § 9-11-26 (c) begins: "*Upon motion* by a party or by the person from whom discovery is sought and for good cause shown . . . ."[69] Yet in none of these examples is "upon" construed to mean "immediately," so as to dispense with the opposing party's opportunity to respond. And rightly so.

Additionally, within the same title pertaining to nuisances, OCGA § 41-2-2 (a) provides: "Private citizens may not generally interfere to have a public nuisance abated. A complaint must be filed by the district attorney, solicitor-general, city attorney, or county attorney on behalf of the public. However, a public nuisance may be abated upon filing of a complaint by any private citizen specially injured." Similarly, the section allowing for the abatement of private nuisances—OCGA § 41-2-3—provides: "A private nuisance may be abated upon filing of a petition by the person

---

[68] (Emphasis supplied).

[69] (Emphasis supplied).

injured." And significantly, both of these sections were amended at the same time as OCGA § 41-2-1, replacing "on the application" with "upon filing of a petition."[70] So, according to the County's interpretation of "upon," we should—for the sake of consistency—assume the General Assembly also "streamlined" a private citizen's ability to abate public and private nuisances unfettered by any notice or hearing requirements. Moreover, we should apparently do so despite no persuasive explanation from the County as to why "upon filing" results in such a drastic curtailment of sacrosanct due-process rights that "on application" were never permitted. But our (natural) reading of the term "upon"—as well as our Supreme Court's reading of same[71]—avoids such an absurd conclusion. Suffice it to say, the trial court did not err in ruling that public nuisance-abatement actions are civil actions and the Civil Practice Act applies to them.

---

[70] *See* Ga. L. 1980, p. 620, § 2-3; 1933 Code, § 72–202 ("Private citizens may not generally interfere to have a public nuisance enjoined, but the petition must proceed for the public on information filed by the solicitor general of the circuit. A public nuisance may be abated on the application of any citizen specially injured."); 1933 Code, § 72–203 ("A private nuisance may be abated on the application of the person injured.").

[71] *See supra* note 66 & accompanying text.

5. Finally, the County claims the trial court erred by holding a hearing in this matter at all, arguing that because GMHP maintained a public nuisance, it was not entitled to *any* due-process rights. But given our holding in Division 1, *supra*, that the *ex parte* order appointing the receiver violated GMHP's due-process rights to notice and a hearing, we obviously disagree and need not reiterate those reasons in detail here.

That said, it is worth noting that, in positing this argument, the County fails to distinguish the legal concepts of procedural due process and substantive due process under the Fourteenth Amendment, citing to caselaw discussing the balance between the latter and a state's police power—*i.e.*, the state's *legislative power* "to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety."[72] But unlike the caselaw cited by the

---

[72] *Mugler v. Kansas*, 123 U.S. 623, 661 (8 SCt 273, 31 LE 205) (1887); *see Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1020-22 (III) (B) (112 SCt 2886, 120 LE2d 798) (1992) (holding that state's use of police power to prevent building in coastal areas due to erosion concerns nevertheless constituted a regulatory taking warranting just compensation); *Goldblatt v. Hempstead*, 369 U.S. 590, 592-96 (82 SCt 987, 8 LE2d 130) (1962) (upholding law effectively preventing continued operation of quarry in residential area against challenge that such was a taking without just compensation); *Miller v. Schoene*, 276 U.S. 272, 279-80 (48 SCt 246, 72 LEd 568) (1928) (holding state law ordering destruction of diseased cedar trees to prevent infection of nearby orchards was valid exercise of police law and did not violate

County, the abatement action here was initiated under the general abatement Code sections and not a specific statute enacted to address a specific harm. Consequently, the authority relied on by the County is entirely inapposite.

So, in summary, in Case No. A24A0693, we reverse the grant of the *ex parte* order because it violated GMHP's due-process rights to notice and a hearing and because the receiver was appointed without a supporting legal basis. We also vacate the trial court's ruling that GMHP maintained a nuisance and remand for further consideration of that issue consistent with this opinion. But we affirm the trial court's rulings in Case No. A24A0698.

*Judgment affirmed in Case No. A24A0698; judgment reversed in part, vacated in part, and case remanded with direction in Case No. A24A0693. Brown and Padgett, JJ., concur.*

---

property owner's substantive due process rights); *Hadacheck v. Sebastian*, 239 U.S. 394, 410-12 (36 SCt 143, 60 LE 348) (1915) (concluding city ordinance barring operation of brick mill in residential area was a proper exercise of police power); *Mugler*, 123 U.S. at 664-65 (upholding state law prohibiting manufacture of alcoholic beverages over challenge such violated substantive due process and takings clause); *Rowland v. Morris*, 152 Ga. 842, ____ (111 SE 389, 392 (1)) (1922) (holding state-wide tick eradication act requiring cattle owners to "dip" cattle to prevent infection was valid exercise of police power, did not violate due process, or takings clause).